IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH H. COTTON,<br><br>    Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER<br>JASON DONNER, et al.,<br><br>    Defendants.<br>_____ | ) No. C 06-0862 MJJ (PR)<br>)<br>) **ORDER GRANTING IN PART AND**<br>) **DENYING IN PART DEFENDANTS'**<br>) **MOTION FOR SUMMARY**<br>) **JUDGMENT; DIRECTING**<br>) **PLAINTIFF TO FILE NOTICE RE:**<br>) **INTENT TO PROSECUTE AND**<br>) **APPOINTMENT OF COUNSEL**<br>)<br>) **(Docket Nos. 10, 16)**<br>) |

    Plaintiff filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983. He alleges that while he was housed at the Santa Cruz County Jail, he was subject to excessive force by five jail guards, all of whom he named as defendants.[1] On June 6, 2006, after an initial review of the complaint under 42 U.S.C. § 1915, the Court ordered the complaint served on the five defendant jail guards (hereinafter collectively referred to as "defendants"), finding the allegations, when liberally construed, stated cognizable claims against them.[2] Defendants have filed a motion to for summary judgment or partial summary judgment. Although given an opportunity to do so, plaintiff has not filed an opposition. Defendants

---

[1] At the time the complaint was filed, plaintiff was incarcerated, but it appears he has since been released as he notified the Court in March 2006 of a change of address "care of" a residence in Sunnyvale, California.

[2] Claims against three other defendants were dismissed for failure to state a cognizable claim for relief.

G:\PROSE\MJJ\CR.06\COTTON.MSJ.WPD

also seek judicial notice of records from plaintiff's state court criminal proceedings.

## **FACTUAL BACKGROUND**

According to plaintiff's verified complaint,[3] on October 28, 2004, while being booked into the jail, he refused to sign a document acknowledging he had been granted his right to a phone call. Plaintiff adopted a "defensive stance," but after complying with an order to place his hands on the back of his head, get down on his knees, and face away from the jail guard, defendant Jason Donner ("Donner") "grabbed" him by his hair. Plaintiff then stood up and the other defendants approached. While Donner pulled him by the hair, defendant Scott Enrico ("Enrico") held him by his hands, and defendant Ryan Fulton ("Fulton") punched him with a closed fist in the throat, chest and ear. Plaintiff "struggled to get out of the melee," and defendant Luis Hevia ("Hevia") shot plaintiff with a taser gun in the side of his torso. Plaintiff was knocked to the ground by the various guards who had gathered, and Enrico twisted plaintiff's arm "out of joint" while defendant Jacob Ainsworth ("Ainsworth") bent plaintiff's thumb back until it was "out of joint." During this time, another guard had shackled plaintiff's feet. Donner then shot plaintiff four more times with the taser gun, including twice in the back, once in the leg, and once in the neck, knocking plaintiff unconscious. Plaintiff was then strapped down in a restraint chair, at which point Donner shot plaintiff with a taser gun in the groin.

According to defendants, plaintiff, who is "6'2," 200 pounds and "extremely muscular," became "agitated," "combative," and "violent," during booking. As Donner approached him, plaintiff raised his fists, and Donner called for a taser gun. Plaintiff refused orders to kneel down, and Enrico grabbed plaintiff's arms, while Donner reached for plaintiff's hair. Plaintiff punched Donner in the face three or four times. Conner then brought plaintiff to the ground, where he was violently fighting and kicking. Hevia used a taser gun on plaintiff's shoulder, but plaintiff kept fighting. Another officer put plaintiff's

---

[3] The Court treats the allegations in plaintiff's verified complaint as an opposing affidavit to the extent that such allegations are based on plaintiff's personal knowledge and set forth facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

1 legs in shackles, but plaintiff continued to violently resist and disobey orders to comply.
2 Donner then shot plaintiff with the taser gun once in the shoulder and once in the neck, which
3 immediately stopped plaintiff's resistance.  Plaintiff was then attached to a restraint chair, but
4 he stood up and tried to break out of the chair.  He was agitated, raised his voice and refusing
5 to comply, and Donner fired the taser gun at plaintiff's inner thigh.  The entire altercation
6 took place in less than five minutes, and plaintiff fought against the guards the entire time.

7      In Santa Cruz County Superior Court, plaintiff subsequently pled nolo contendere to
8 one count of battery on a custodial officer, pursuant to California Penal Code § 243(c)(1),
9 based on Donner's account of plaintiff's punching Donner in the face four times.  On
10 December 20, 2005, he was sentenced to a term of two years in state prison.

## DISCUSSION

**A.      Standard of Review**

     Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  See id.

     The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."   See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (holding fact material if it might affect outcome of suit under governing law, and that dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to

the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotations and citations omitted).

At summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

**B.      Legal Claims**

    1.      Defendant Donner

Defendants argues that plaintiff's state court conviction for battery on a defendant Donner based on the altercation that gives rise to the present action, his claim of excessive force against Donner is barred.

In order to recover damages for an alleged unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Id. at 487. Therefore, whenever a state prisoner seeks damages in a § 1983 suit, as plaintiff does here, a district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the

conviction or sentence has already been invalidated. See id.

The United States Court of Appeals for the Ninth Circuit, sitting en banc, addressed the circumstances under which Heck bars excessive force claims arising out of an incident in which the plaintiff was convicted of resisting arrest. See Smith v. City of Hemet, 394 F.3d 689, 696 (9th Cir.2005) (en banc). As the Smith opinion explained, an essential element of a conviction for resisting a peace officer pursuant to California Penal Code § 148[4] is that the police officer was "engaged in the performance of his official duties." Id. at 695. Under California law, this means that the police officer was engaged in "lawful" conduct, including not using excessive force. See id. at 695-96 (citing California state court decisions). Thus, if a plaintiff was convicted under § 148 for resisting a police officer during the course of an arrest, his subsequent 42 U.S.C. § 1983 claim that the police officer used excessive force during the course of that arrest would, if successful, necessarily undermine the conviction. Id. at 697-98. In such circumstances, the Heck bar applies. Id..

It is undisputed that plaintiff was convicted of committing battery upon Donner pursuant to § 243(c)(1), and that this conviction has not been expunged, reversed, invalidated or otherwise called into question. Although plaintiff's conviction in this case was not pursuant to § 148, but rather pursuant to § 243(c)(1), this makes no difference for the present analysis. Like § 148, under California law, a defendant can only be convicted of battery under § 243(c)(1) if the officer's conduct was "lawful" when the defendant committed battery on him. See Cal. Pen. Code § 253(c)(1) (forbidding battery upon a custodial officer "engaged in the performance of his or her duties"); In re Manual G., 16 Cal.4th 805, 815 (1997) ("because an officer has no duty to take illegal action, he or she is not engaged in 'duties' for purposes of an offense defined in such terms, if the officer's conduct is unlawful."); In re Joseph F., 85 Cal.App.4th 975 (2000). Moreover, for purposes of a § 243(c)(1) conviction, like a § 148 conviction, the officers' conduct was not "lawful" if they used excessive force. Cf. Smith, 394 F.3d at 695-96 (explaining that under California law

---

[4] Hereafter, all statutory references are to the California Penal Code, unless otherwise specified.

1  the use of excessive force renders the officers' conduct unlawful).  Thus, as in <u>Smith</u>,

2  plaintiff's conviction for battery upon defendant Donner pursuant to § 243(c)(1) 148 or § 69,

3  <u>Heck</u> bars the plaintiff from pursuing claims that the officers used excessive force while

4  effectuating that arrest.

5       <u>Smith</u> drew a distinction between a plaintiff who resists officers *before* they use force,

6  and a plaintiff who resists during the course of the arrest and accompanying application of

7  force.  <u>Id.</u> at 697-98.  In <u>Smith</u>, the court identified different "phases" of the encounter

8  between the plaintiff (Mr. Smith) and the officer, and held that if Smith's § 148 conviction

9  was for his resisting the officers during the "investigative phase," i.e. *before* the officers had

10 begun to arrest and use force against him, then <u>Heck</u> did not bar his claims that the force was

11 excessive.  <u>Id.</u> at 698.  On the other hand, if Smith's conviction was for resisting the officers

12 during while the officers were using the purportedly excessive force, then <u>Heck</u> did bar his

13 claims that the officers used excessive force.  <u>Id.</u> at 698-99.

14      The distinction drawn in <u>Smith</u> is not applicable here because, unlike in <u>Smith</u>,

15 plaintiff's battery on Donner and the officers' use of force against him did not occur in

16 different "phases" of the incident.  Here, plaintiff punched Donner in the face after Donner

17 and Enrico had begun to use force upon him by grabbing his hair and hands.  The evidence is

18 undisputed that the entire altercation, including the officers' use of force and plaintiff's

19 striking Donner, was a single course of events that lasted less than five minutes.  As such,

20 under the reasoning of <u>Smith</u>, <u>Heck</u> bars plaintiff's claims that Donner's use of force against

21 him was excessive, and on this basis, Donner is entitled to summary judgment on plaintiff's

22 claims.

23     2.    <u>Remaining Defendants</u>

24      Defendants assert, inter alia, that they are entitled to qualified immunity.[5]

25

---

26     [5]Defendants also argue that the claims against the remaining four defendants are also
27 barred by <u>Heck</u> due to plaintiff's battery conviction.  Plaintiff's battery conviction was for striking Donner, not the other defendants.  Thus, plaintiff's conviction only depends on
28 Donner's conduct having been lawful; nothing about plaintiff's conviction requires that the other officers, upon whom he was not convicted of battery, were also engaged in lawful

In considering the merits of qualified immunity defense in a case involving excessive force during an arrest, the threshold question is: based on the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answer is no, there is no need for further inquiry. Id. If the answer is yes, the next sequential step is to ask whether the right violated was clearly established. Id.

The constitutional right at issue when it is alleged that a law enforcement officer used excessive force in the course of an arrest or other seizure is the Fourth Amendment right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 386, 394 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Id. at 396 (citations omitted). Because the reasonableness standard is not capable of precise definition or mechanical application, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation and without the "20/20 vision of hindsight." Id. Moreover, police officers may also be held liable if they have an opportunity to intercede when their fellow officers violate the constitutional rights of a plaintiff but fail to do so. See Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

Taking the verified factual allegations in the complaint as true and drawing all

---

activity. As a result, success on plaintiff's claims of excessive force against the other defendants would not "necessarily imply" that his conviction for battery upon Donner was invalid.

1 inferences therefrom in plaintiff's favor, as the Court must do at this stage under Saucier,
2 there is a triable issue of fact as to whether the remaining prison guards' use of force was
3 unreasonable under the circumstances.  The issue of whether the amount of force used was
4 reasonable generally questions of fact for a jury because the Fourth Amendment test for
5 reasonableness is inherently fact-specific.  See Headwaters Forest Defense v. County of
6 Humboldt, 240 F.3d 1185, 1198 (9th Cir. 2001); Hervey v. Estes, 65 F.3d 784, 791 (9th Cir.
7 1995).  With respect to Fulton, plaintiff asserts that Fulton punched plaintiff three times in
8 the throat, ear and chest while plaintiff was being restrained by two guards, Donner and
9 Enrico, and after plaintiff had obeyed orders to kneel down, put his hands on his head and
10 turn away.  Punching a restrained and compliant inmate three times would, if true, be an
11 unreasonable application of force. With respect to Enrico and Ainsworth, plaintiff asserts
12 Enrico twisted plaintiff's arm "out of joint" and Ainsworth bent plaintiff's thumb back until
13 it was "out of joint," *after* plaintiff had been knocked to the ground and was surrounded by at
14 least five guards.  It is not clear what plaintiff means precisely by "out of joint," but drawing
15 all inferences in his favor from this allegation could mean that his arm and thumb were
16 dislocated.[6]  Even if, as plaintiff indicates, he had "struggled to get out of the melee," that
17 amount of force by Enrico and Ainsworth while plaintiff was on the ground and surrounded
18 by guards would, if true, be unreasonable under the circumstances.

19 With respect to Hevia, who was a Supervising Correctional Officer, according to
20 plaintiff, Hevia shot plaintiff with a taser gun once in the side of his torso while plaintiff
21 "struggled to get out of the melee."  Hevia states in his declaration that he attempted to taser
22 plaintiff once in the leg, but plaintiff was thrashing around so much that the taser stunned
23 everyone but plaintiff, and Hevia then passed the taser to Donner who used it on plaintiff's
24 shoulder and elsewhere. (Hevia Decl. at ¶ 4.)  Even assuming plaintiff's allegation is true,
25 Hevia's firing a single taser shot at plaintiff does not in and of itself amount to an
26 unreasonable amount of force to restrain a struggling inmate of plaintiff's size and strength.

---

28 [6]Defendants do not submit plaintiff's medical records or other evidence as to the extent of plaintiff's injuries.

1  Nevertheless, Hevia may be held liable for failing to intercede in the use of excessive force
2  by the other guards, see Cunningham, 229 F.3d at 1289-90, especially given his opportunity
3  as a supervisor to order the other guards to cease their use of force.
4       Moreover, the case law at the time of defendants' actions in this case, in 2004, clearly
5  prohibited punching a restrained and heretofore compliant inmate, twisting his arm and
6  thumb "out of joint" while he was on the ground and surrounded by at least five guards, and
7  to failing to intercede in the use of excessive force by other law enforcement officials when
8  given the opportunity to do se.  See, e.g., Drummond v. City of Anaheim, 343 F.3d 1052,
9  1058-60 (9th Cir. 2003); Meredith v. Erath, 342 F.3d 1057, 1061(9th Cir. 2003);
10 Cunningham, 229 F.3d at 1289-90.  As a result, no reasonable officer could believe that such
11 actions were constitutionally permitted.  In sum, taking plaintiff's verified allegations as true
12 and drawing all inferences therefrom in his favor, there is a genuine issue of fact that
13 defendants Enrico, Ainsworth, Fulton and Hevia violated his constitutional rights, and they
14 are not entitled to summary judgment either on the basis of qualified immunity or on the
15 grounds that they did not violate his constitutional rights.

## CONCLUSION

17       In light of the foregoing, the Court hereby orders as follows:
18       1.      For the foregoing reasons, defendants' motion for summary judgment is
19 GRANTED as to defendant Donner, and DENIED as to defendants Enrico, Ainsworth,
20 Fulton and Hevia.
21 //
22 //

2. As plaintiff did not file an opposition to the motion for summary judgment or to defendant's prior motion to dismiss, and has not filed a document in this matter since a change of address notice filed over one year ago, it is unclear whether he wishes to proceed with the action. **Accordingly, within thirty days of the date this order is filed, plaintiff shall notify the Court as to whether he intends to prosecute this matter, and also whether or not he wishes to have counsel appointed to represent him in this matter. Plaintiff is hereby advised that his failure to timely notify the Court of these matters will result in the dismissal of the above-titled action for failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.**

This order terminates Docket Nos. 10, 16 and all other pending motions.

IT IS SO ORDERED.

DATED: 3/30/2007

_____
MARTIN J. JENKINS
United States District Judge